**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JACQUELINE YOUNKER,** | **CASE NO. 1:20-CV-00486** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **BOARD OF EDUCATION OF THE LORAIN CITY SCHOOL DISTRICT, et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | |

This matter comes before the Court upon several motions of the parties. On April 30, 2020, Defendant Board of Education of the Lorain City School District (the "Board") filed a Motion for More Definite Statement. (Doc. No. 8.) Plaintiff Jacqueline Younker ("Younker") filed a brief in opposition to the Board's Motion on May 14, 2020, to which the Board did not reply. (Doc. No. 11.)

On May 1, 2020, Defendant Gregory D. Ring ("Ring") filed a Motion to Dismiss Pendent State Claim for Breach of Contract and a Motion to Dismiss Discrimination Claims. (Doc. Nos. 9, 10.) Younker filed a combined brief in opposition to both of Ring's Motions on June 1, 2020. (Doc. No. 12.) Ring filed a reply in support of his Motion to Dismiss Pendent State Claim for Breach of Contract on June 10, 2020, but did not reply to Younker's opposition to his Motion to Dismiss Discrimination Claims. (Doc. No. 13.)

For the following reasons, the Board's Motion for More Definite Statement (Doc. No. 8) is DENIED, Ring's Motion to Dismiss Pendent State Claim for Breach of Contract (Doc. No. 9) is GRANTED, and Ring's Motion to Dismiss Discrimination Claims (Doc. No. 10) is DENIED.

## I. Background

### a. Factual Allegations

In March 2018, Younker was hired by the Lorain City School District (the "District") as Chief People Officer ("CPO") and entered into a three-year employment agreement with the District, ending on March 12, 2021 ("March 2018 Employment Agreement"). (Doc. No. 1 at ¶¶ 13, 16; Doc. No. 3-1.) Younker's March 2018 Employment Agreement included a provision that Younker's contract with the District would terminate in the event the District transitioned to a new Chief Executive Officer ("CEO"). (Doc. No. 3-1 at 2.) Specifically, Paragraph 12 of the March 2018 Employment Agreement provides:

> Should the District no longer remain under Academic Distress pursuant to Ohio Revised Code Section 3302.10 and/or there is a transition in CEO during the term of this Contract, CPO's Contract shall terminate and she shall be compensated for ninety (90) days of her then current base salary based on a 240-day work year. CPO shall also receive insurance benefits during the 90-day period.

(*Id.*)

Younker's March 2018 Employment Agreement was subsequently amended by the District in May 2019 and memorialized in a signed memorandum of understanding ("May 2019 Amendment"). (Doc. No. 1 at ¶ 17; Doc. No. 3-2.) The May 2019 Amendment included the following language:

> The above-referenced Chiefs employment contract language concerning separation from employment shall be superseded and replaced by the following: Should the District no longer remain under Academic Distress pursuant to Ohio Revised Code Section 3302.10 and/or there is a transition in CEO during the term of this contract and the Chief's contract is terminated and/or the Chief is otherwise dismissed or separated from employment, **he**/she shall be compensated for **~~ninety (90)~~ one hundred twenty (120)** days of his/her then current base salary based on a 240-day work year. Chief shall also receive insurance benefits during the **~~90~~ 120-**day period.

(Doc. No. 3-2 at 1.) According to Younker, this language amended her March 2018 Employment Agreement so that if there was a transition in the District's CEO, Younker's employment would no longer be automatically terminated. (Doc. No. 1 at ¶¶ 22-23.) The May 2019 Amendment also provided that Younker would be paid for all unused accrued vacation not to exceed seventy-five days upon her separation from employment with the District. (Doc. No. 3-2 at 1.)

On July 1, 2019, Younker's March 2018 Employment Agreement was further amended by the District to increase Younker's annual base salary to $118,500 ("July 2019 Amendment"). (Doc. No. 1 at ¶ 24; Doc. No. 3-3.)

On January 3, 2020, the District hired Ring as its Interim CEO. (Doc. No. 1 at ¶ 30.)

Five days later, on January 8, 2020, Younker emailed Ring and informed him she would not be present at work the next morning due to a "prenatal appointment." (*Id.* at ¶ 31.) A couple of weeks after that, on January 22, 2020, Younker emailed Ring to inform him that she was pregnant and planned to utilize FMLA leave related to her pregnancy. (*Id.* at ¶ 32.) Specifically, Younker's email to Ring stated:

> I wanted to let you know that I have started planning for maternity leave. Younker baby #2 is due on July 29th, based on my last pregnancy, I will plan to start FMLA about a week sooner than my due date; therefore, my first day of FMLA will be Monday, July 20th.

(*Id.* at ¶ 33.)

Shortly thereafter, on January 31, 2020, Ring informed Younker that her employment with the District was terminated, effective immediately. (*Id.* at ¶ 35.) Ring claimed that he had no choice but to end Younker's employment because her employment agreement terminated when Ring took over as Interim CEO about a month earlier. (*Id.* at ¶ 36.) Ring also informed Younker that she would not be provided the severance compensation, vacation payout, or benefits promised to her under the

March 2018 Employment Agreement, May 2019 Amendment, and July 2019 Amendment. (*Id.* at ¶ 41.)

**b. Procedural History**

On March 3, 2020, Younker filed a Complaint against the Board and Ring (collectively, "Defendants") in this Court, setting forth claims for retaliation under the Family and Medical Leave Act ("FMLA"), pregnancy discrimination under Ohio law, aiding and abetting discrimination under Ohio law, and breach of contract. (Doc. No. 1.)

On April 30, 2020, the Board filed a Motion for More Definite Statement pursuant to Fed. R. Civ. P. 12(e). (Doc. No. 8.) Younker filed a brief in opposition to the Board's Motion on May 14, 2020. (Doc. No. 11.) The Board did not file a reply.

On May 1, 2020, Ring filed a Motion to Dismiss Pendent State Claim for Breach of Contract, seeking to dismiss Younker's breach of contract claim for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and a Motion to Dismiss Discrimination Claims, seeking to dismiss Younker's FMLA and state law discrimination claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. Nos. 9, 10.) Younker filed a combined brief in opposition to both of Ring's Motions on June 1, 2020. (Doc. No. 12.) Ring filed a reply in support of his Motion to Dismiss Pendent State Claim for Breach of Contract on June 10, 2020, but did not reply to Younker's opposition to his Motion to Dismiss Discrimination Claims. (Doc. No. 13.)

## II. The Board's Motion for More Definite Statement

In the Board's Motion for More Definite Statement, the Board asserts that the Board is not an entity, that a board of education is a distinct and separate political body from that of a school district, and that a more definite statement is required to identify the defendant against which the Complaint

is brought. (Doc. No. 8 at 1-2.) In opposition, Younker argues that the Board has not identified any vague or ambiguous statements in Younker's Complaint as required by Rule 12(e), and that if the Board disagrees that it is the proper party to be named in the instant matter, then a more appropriate course of action would be to file a motion to dismiss under Rule 12(b)(6). (Doc. No. 11 at 1.) To the extent the Board's Motion can be viewed as arguing that the Board is improperly named, Younker asserts that she was correct to name the Board, rather than the District, as a defendant. (*Id.* at 1-2.). The Court agrees with Younker on both fronts.

First, Rule 12(e) provides, in relevant part, the following:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e). While the Board appears to argue that it either is not an entity or is improperly named, it has not identified any vagueness or ambiguity in Younker's Complaint. Indeed, the Complaint unambiguously identifies the Board as a defendant. As such, denial of the Board's Motion is appropriate.

Second, denial is required even if the Board's Motion is viewed as a challenge to the propriety of Younker naming the Board as a defendant in this action. Ohio Revised Code § 3313.17 provides that "[t]he board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued." Ohio Rev. Code § 3313.17. As such, "[i]n legal actions involving the schools, it is the board of education which must be sued." *Wortham v. Akron Pub. Sch.*, No. 5:08CV233, 2008 WL 762530, at *2 (N.D. Ohio Mar. 20, 2008) (quoting *Carney v. Cleveland Heights-Univ. Heights City Sch. Dist.*, 758 N.E.2d 234, 241 (Ohio Ct. App. 8th Dist. 2001)); *accord Thompson v. Bd. of Educ.*, No. 3:12–cv–287, 2013 WL 6001626, at *3 (S.D. Ohio Nov. 12, 2013)

("A school district is not *sui juris*, rather it is the board of education which must be sued."); *Y.S. v. Bd. of Educ. of Mathews Local Sch. Dist.*, 766 F. Supp. 2d 839, 841 (N.D. Ohio 2011) ("Since there is no doubt that the Board of Education is capable of suing and being sued, *see* O.R.C. § 3313.17 ('[t]he board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued'), and since the Board of Education has been named as a party defendant, there may be no reason to retain Mathews Local School District as a defendant."). Thus, the Board—not the District—is the proper defendant in this action, and the Board's Motion for More Definite Statement is denied.

## III. Ring's Motion to Dismiss Pendent State Claim for Breach of Contract

### a. Standard of Review

When subject matter jurisdiction is challenged in a motion to dismiss pursuant to Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Motions under Rule 12(b)(1) "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* Thus, the complaint's material allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.* On the other hand, factual attacks challenge "the factual existence of subject matter jurisdiction." *Id.* In that case, the court is free to weigh the evidence before it without a presumption of truthfulness. *Id.* Although Ring does not specify whether he sets forth a facial or factual attack on jurisdiction, Ring has not submitted any evidence outside of the pleadings and appears to attack the sufficiency of the Complaint itself to establish jurisdiction. As a

result, the Court will presume Ring's Motion to Dismiss Pendent State Claim for Breach of Contract is a facial attack and accept the material allegations in Younker's Complaint as true.

**b. Analysis**

Ring asserts that the Court lacks jurisdiction over Younker's claim for breach of contract. (Doc. No. 9 at 7-8.) In particular, Ring contends the Court lacks supplemental jurisdiction because Younker's breach of contract claim based on Defendants' failure to perform their obligations with respect to Younker's severance package does not share a common nucleus of operative facts with her federal claim that she was fired in retaliation for requesting leave under the FMLA. (*Id.*) Alternatively, Ring argues that even if supplemental jurisdiction does exist, the Court should decline to exercise its jurisdiction because Younker's breach of contract claim involves novel issues of Ohio law—namely, whether Younker's severance package violates public policy. (*Id.* at 6.)[1] In response, Younker contends that her breach of contract and FMLA retaliation claims are sufficiently intertwined to establish supplemental jurisdiction. (Doc. No. 12 at 6.) Further, Younker argues that Ring's "novel" public policy defense does not support declining jurisdiction. (*Id.* at 5.) Upon review, the Court concludes that Younker has not established that supplemental jurisdiction exists, and, even if jurisdiction did exist, the Court would decline to exercise it in light of the novel issues of Ohio law involved in Younker's breach of contract claim.

In general, federal courts have original jurisdiction over a case if it arises under federal law or if the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331-32. In addition, if a court has original jurisdiction over one claim, the court can exercise supplemental

---

[1] Ring also argues that the risk of jury confusion supports dismissal, but the Court need not address this contention based on its rulings below. (Doc. No. 9 at 8.)

jurisdiction over all other claims that form part of the same case or controversy. 28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002) (quoting *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996)). "Operative facts are facts that are relevant to the resolution of the claim." *Vogel v. Ne. Ohio Media Grp. LLC*, No. 1:17CV272, 2017 WL 3157920, at *1 (N.D. Ohio July 25, 2017).

However, "[t]he decision to exercise supplemental jurisdiction 'is committed to the district court's discretion and is not mandatory.'" *Filing v. Phipps*, No. 5:07CV1712, 2008 WL 11380153, at *4 (N.D. Ohio Oct. 17, 2008) (quoting *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 n.2 (6th Cir. 1978)); *see also Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) ("Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right.") (citations and internal quotations omitted). "[E]ven if a district court has supplemental jurisdiction under § 1367(a), § 1367(c) makes clear that it need not exercise that jurisdiction in certain circumstances." *Filing*, 2008 WL 11380153, at *4. Specifically, § 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In addition to looking to the existence of one or more of the four circumstances enumerated in § 1367(c) to determine whether to exercise supplemental jurisdiction, "courts should treat the state law claims 'in the manner that best serves the principles of [judicial] economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.'" *Filing*, 2008 WL 11380153, at *5 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

In support of supplemental jurisdiction, Younker points out that the triggering event for both Younker's breach of contract claim and her FMLA retaliation claim was the termination of her employment on January 31, 2020. (Doc. No. 12 at 6.) However, in similar situations, courts have found this is not sufficient by itself to establish supplemental jurisdiction. *See Nicol v. Imagematrix, Inc.*, 767 F. Supp. 744, 748 (E.D. Va. 1991) (holding no common nucleus of operative facts existed between the plaintiff's Title VII claim based on her termination due to her pregnancy and her breach of contract claim based on the defendants' failure to pay the plaintiff her accrued vacation pay because the plaintiff's "allegations share[d] no facts with the Title VII claim, other than the mere fact of plaintiffs' employment"); *see also Vogel*, 2017 WL 3157920, at *2 ("Plaintiff's administrative leave and termination are common to the narrative of all of Plaintiff's claims, but they are not operative facts for Plaintiff's claims against Defendants."). Younker also argues that jurisdiction exists because Ring is using the interpretation of Younker's March 2018 Employment Agreement and subsequent amendments as justification for the termination of her employment. (Doc. No. 12 at 6.) However, as far as the Court can tell, whether Younker's termination was justified by her employment contract is not relevant to the issue of whether she is entitled to the severance package under that contract after her termination. Thus, the Court disagrees with Younker's contention that there is significant overlap between her claims and finds that supplemental jurisdiction does not exist.

In addition, as noted above, "[e]ven where 'the [Court] arguably ha[s] supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), the [C]ourt has discretion to decline to exercise its supplemental jurisdiction.'" *Dembowski v. Lichocki*, No. 07-10682, 2007 WL 763844, at *1 (E.D. Mich. Mar. 9, 2007) (quoting *Cirasuola v. Westrin*, No. 96-1360, 1997 WL 472176, at *1 (6th Cir. Apr.18, 1997)). One reason a court may decline to exercise supplemental jurisdiction over a claim is if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). "Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts." *Sanford v. Mullins,* No. 1:16-cv-1431, 2017 WL 82598, at *4 (W.D. Mich. Jan. 10, 2017) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)).

Here, Ring asserts that the provision of exorbitant severance packages to public school department administrators, such as Younker, is against public policy and that Younker's severance package is therefore unenforceable. (Doc. No. 9 at 6 ("[I]t is the contention of the City of Lorain Law Director that exorbitant golden parachutes under these circumstances are against public policy.").) Ring contends this is a novel matter of state law that has not been addressed by Ohio courts. (*Id.*) The Court agrees. Based on its own research, the Court found only one Ohio case that addressed whether a severance package for a school administrator violated public policy. *See Lawless v. Bd. of Educ. of Lawrence Cty. Educ. Serv. Ctr.*, 141 N.E.3d 267, 280-83 (Ohio Ct. App. 4th Dist. 2020). However, in that case, the court addressed the enforceability of a severance package for a school treasurer that had been fired for cause. *Id.* at 282. Relying on that fact, the court found that the severance package was "inconsistent with the preservation of the fiscal integrity of the educational

service center" and "inconsistent with public policy as expressed in the Unemployment Compensation Act, which provides individuals with benefits as compensation for loss of remuneration due to involuntary unemployment but generally does not apply to an individual who is 'discharged for just cause.'" *Id.* at 282. In the instant matter, there is no indication that Younker's employment was terminated for cause. Rather, Ring claims the termination occurred automatically as a result of the transition in the District's CEO. (Doc. No. 10 at 6.) Thus, this case does appear to present an issue of first impression under Ohio law as to whether a severance package for a public employee or school administrator not terminated for cause violates public policy. As such, the Court finds that Younker's breach of contract claim involves a novel matter of state law that supports declining to exercise jurisdiction over it.

Younker does not dispute the novelty of the issue presented, but instead argues that Ring should not be allowed to avoid jurisdiction simply by stating he will raise a novel public policy defense at some point in the future, that allowing defendants to weaponize public policy defenses to manipulate jurisdiction would be a slippery slope, and that Ring's argument is the functional equivalent of a defendant attempting to forum shop by seeking removal based on a federal question raised solely by a defense to a state law claim, which is insufficient under the well-pleaded complaint rule. (Doc. No. 12 at 5-6.) The Court finds Younker's arguments unpersuasive. The well-pleaded complaint rule is clearly irrelevant in these circumstances, and Younker cites no support for her contention that merely because a novel issue of state law is involved in a defense, it cannot support a court's decision to decline jurisdiction under § 1367(c)(1). Nor does it appear that Ring has raised a frivolous public policy defense just to avoid jurisdiction, such that the Court need be concerned about forum shopping or the manipulation of jurisdiction.

Finally, the Court finds that dismissal is also appropriate in light of "the principles of [judicial] economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Filing*, 2008 WL 11380153, at *5 (quoting *Carnegie-Mellon*, 484 U.S. at 357). First, comity dictates that Ohio state courts should resolve the novel issue presented, especially given that it involves issues of public policy that relate to the enforceability of public contracts between local political bodies and their employees. *See Sanford*, 2017 WL 82598, at *4. Second, with respect to judicial economy, relevant factors include "what judicial resources have already been expended" and the interest in the "avoidance of multiplicity of litigation." *Filing*, 2008 WL 11380153, at *10 (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)). This Court has not expended any time considering the state law issues presented in Younker's breach of contract claim, and, thus, there is no interest in judicial economy in terms of resources expended. And while dismissing Younker's breach of contract claim would require her to file it in state court, leading to two separate suits concerning some of the same background facts, the dispositive issues in the two suits will be largely independent of one another, as noted above. As a result, there will not be much duplication of effort between the cases. Finally, Younker has not demonstrated that she will be inconvenienced or prejudiced were her breach of contract claim to proceed in state court. Consequently, even if this Court had jurisdiction over Younker's breach of contract claim, the Court would decline to exercise that jurisdiction because of the novel matters of state law presented. Thus, the Court will grant Ring's Motion to Dismiss Pendent State Claim for Breach of Contract.[2]

[2] Although the Board has not joined Ring's Motion or specifically moved to dismiss the breach of contract claim against it, the issues of supplemental jurisdiction are identical with respect to Younker's breach of contract claim against the Board. Therefore, for the same reasons discussed above, the Court also will dismiss Younker's breach of contract claim against the Board. *See Stepp v. Medina City Sch. Dist. Bd. of Educ.*, No. 1:13 CV 01126, 2014 WL 3842853, at *2 (N.D. Ohio Aug. 5, 2014) ("[T]he court may consider *sua sponte* whether to exercise supplemental jurisdiction.").

## IV. Ring's Motion to Dismiss Discrimination Claims

### a. Standard of Review

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

**b. Analysis**

In his Motion to Dismiss Discrimination Claims, Ring asserts that Younker's retaliation claim under the FMLA and her pregnancy discrimination claims under Ohio law should be dismissed for failure to state a claim. He argues that the automatic termination provision in Paragraph 12 of Younker's March 2018 Employment Agreement was not changed by any of the subsequent amendments, and, as a result, Younker's employment ended by operation of the contract on January 3, 2020 when there was a change in the District's CEO. (Doc. No. 10 at 6.) Therefore, Ring asserts that Younker was no longer an employee entitled to FMLA leave or protections when she informed Ring of her intention to take FMLA leave on January 22, 2020 or when she was notified of her termination on January 31, 2020. (*Id.* at 6-7.) Relatedly, with respect to Younker's state law discrimination claims, Ring argues that dismissal is appropriate because her employment had already been terminated by operation of the March 2018 Employment Agreement prior to when Ring allegedly terminated her employment based on her pregnancy. (*Id.* at 7.) In response, Younker first contends that the May 2019 Amendment superseded the automatic termination language in the March 2018 Employment Agreement such that her employment was not automatically terminated upon a transition in CEO. (Doc. No. 12 at 2-3.) Younker also argues that she has adequately alleged that she was employed by the District until January 31, 2020, nine days after she informed Ring she was pregnant and would require FMLA leave, as she continued to work and was not informed of her

termination until that date. (*Id.* at 4.) The Court will deny Ring's Motion to Dismiss Discrimination Claims.

"[I]n an FMLA retaliation case . . . if the plaintiff does not qualify as an 'eligible employee,' the plaintiff does not state a claim for relief under the FMLA." *Humenny v. Genex Corp.*, 390 F.3d 901, 905 (6th Cir. 2004). In this case, Ring argues that Younker was not an eligible employee when she alleges that she requested FMLA leave because her employment had already previously been terminated by operation of the March 2018 Employment Agreement when there was a change in CEO. However, even assuming, *arguendo*, that Ring's interpretation of the March 2018 Employment Agreement and subsequent amendments is correct and Younker's employment agreement did automatically terminate upon the change in CEO on January 3, 2020,[3] Younker has adequately alleged that she continued her employment with the District past that date. In her Complaint, Younker alleges that Ring did not inform her of her termination until January 31, 2020, at which point her termination became "effective immediately." (Doc. No. 1 at ¶ 35.) Thus, pursuant to the allegations in the Complaint, Younker continued to perform her duties and remained an employee until January 31, 2020. As a result, regardless of whether Younker's *contract* had previously been terminated, she has sufficiently alleged that her *employment* continued and that she was still employed by the District at the time she requested leave under the FMLA and was later informed of her termination by Ring. As such, Ring's request to dismiss Younker's claim under the FMLA is denied.

[3] To be clear, at this time, the Court is not expressing any view as to whether Ring's or Younker's interpretation of the March 2018 Employment Agreement and subsequent amendments is correct.

Based on this same reasoning, the Court finds that Ring's argument in support of dismissal of Younker's state law discrimination claims lacks merit. Younker has adequately alleged that she was still employed by the District when Ring terminated her employment based on her pregnancy.

## V. Conclusion

For the reasons set forth above, the Board's Motion for More Definite Statement (Doc. No. 8) is DENIED, Ring's Motion to Dismiss Pendent State Claim for Breach of Contract (Doc. No. 9) is GRANTED, and Ring's Motion to Dismiss Discrimination Claims (Doc. No. 10) is DENIED. Younker's breach of contract claim in Count IV of her Complaint against the Board and Ring is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: October 5, 2020